UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

UNITED STATES OF AMERICA,

                    Plaintiff,

      -against-

SHONDELL A. MANCE a/k/a SHONDELL
MANCE,

                  Defendant.
----------------------------------------------------------------X



ORDER

17-CV-2902 (NGG) (SJB)

NICHOLAS G. GARAUFIS, United States District Judge.

    The United States of America ("United States" or "Plaintiff") commenced the instant action to recover the amounts owed by Defendant Shondell Mance on Mance's defaulted student loan. (Compl. (Dkt. 1).) The court initially granted Plaintiff's first motion for default judgment and referred the case for an inquest on damages, see United States v. Mance, No. 17-CV-2902, 2017 WL 4857566, at *1 (E.D.N.Y. Oct. 24, 2017), but, after several filings and a hearing, Plaintiff withdrew its motion for default judgment and filed an Amended Complaint. (Dkt. 21.) Mance failed to respond to the Amended Complaint, and the Clerk entered a certificate of default. (Clerk's Entry of Default (Dkt. 26).) Plaintiff filed a new motion for default judgment (Dkt. 27), which the court referred to Magistrate Judge Sanket J. Bulsara for a report and recommendation ("R&R"). (Apr. 19, 2019 Order Referring Mot.) Judge Bulsara issued the annexed R&R on January 16, 2020, recommending the court grant Plaintiff's motion and award damages.

    The court assumes familiarity with the facts of the instant action as thoroughly set forth in Magistrate Judge Bulsara's R&R. (See R&R at 2-8.) The R&R notified Mance of his right to file written objections under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b). (Id. at 19.) The statutory period for filing objections has now expired, and no objections to Judge Bulsara's R&R have been filed.

1

In reviewing a report and recommendation, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1)(C). Where no party has objected, the district court "need only satisfy itself that there is no clear error on the face of the record." *Jarvis v. N. Am. Globex Fund L.P.*, 823 F. Supp. 2d 161, 163 (E.D.N.Y. 2011) (citation omitted).

Upon review, the court finds no clear error in Judge Bulsara's thorough and well-reasoned R&R and hereby AFFIRMS and ADOPTS the R&R in its entirety as the opinion of the court. Accordingly, the United States' Motion for Default Judgment (Dkt. 27) is GRANTED, and relief is awarded in accordance with the R&R.

SO ORDERED.                                     s/Nicholas G. Garaufis

Dated:   Brooklyn, New York                     NICHOLAS G. GARAUFIS
         March 6, 2020                          United States District Judge

# REPORT AND RECOMMENDATION

**BULSARA, United States Magistrate Judge:**

The United States of America ("Plaintiff") commenced this action to recover the amounts owed by Shondell Mance ("Mance") on Mance's defaulted student loan. (Compl. dated May 12, 2017, Dkt. No. 1). After Mance did not appear or respond to the Complaint, the Clerk of Court entered a certificate of default against Mance. (Entry of Default dated June 30, 2017, Dkt. No 8). The Court granted Plaintiff's motion for default judgment on liability on the loan's promissory note and referred the case for an inquest on damages. *United States v. Mance*, No. 17-CV-2902, 2017 WL 4857566, at *1 (E.D.N.Y. Oct. 24, 2017). After several additional filings and a hearing, Plaintiff withdrew its motion for default judgment, the Clerk's entry of default was vacated, and Plaintiff filed an Amended Complaint. (Min. Order dated June 5, 2018; Am. Compl. dated June 15, 2018, Dkt. No. 21). Mance then failed to respond to the Amended Complaint, and the Clerk entered a certificate of default. (Entry of Default dated Aug. 2, 2018, Dkt. No. 26). Plaintiff filed a new motion for default judgment, which was referred to the undersigned in its entirety. (Mot. for Default J. dated Apr. 18, 2018, Dkt. No. 27; Order Referring Mot. dated Apr. 19, 2019). For the reasons stated below, it is respectfully recommended that the motion be granted and judgment be entered against Mance as indicated herein.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Mance's Student Loan History

Mance obtained nine education loans between 1994 and 1997. (Decl. of Chad Keller dated Apr. 5, 2018 ("Keller Decl. I"), Dkt. No. 18 ¶ 22). Eight of the nine loans were issued under the Federal Family Education Loan Program ("FFELP"); the other was a Federal Perkins Loan. (*Id.* ¶¶ 9, 10, 21, 32). Mance failed to make payment in accordance with the terms of the promissory notes, and the FFELP loans were declared in default. (*Id.* ¶¶ 32, 33, 34). In September 1998, the Rhode Island Higher Education Assistance Authority,

1

guarantor for the FFLEP loans, reimbursed the lenders and took ownership of these loans. (*Id.* ¶¶ 34–42).

In May 2001, Mance applied for and secured a Direct Consolidation loan (the "2001 Direct Consolidation Loan") from the United States Department of Education ("DOE") through the Direct Loan Consolidation Center, which operated under contract with the DOE. (*Id.* ¶ 45). Mance signed a promissory note dated May 12, 2001, and returned the signature page to the DOE. (*Id.* ¶ 52). The funds disbursed for this 2001 Direct Consolidation Loan, $37,924.62 as a subsidized loan and $7,761.48 as an unsubsidized loan, paid off the eight FFELP loans, but not the Perkins Loan. (*Id.* ¶ 56).

Mance also failed to make payment in accordance with the terms of the Perkins Loan, which was reported in default on September 7, 2002. (*Id.* ¶¶ 43, 44).

In 2002, Mance applied for and secured another Direct Consolidation loan from the DOE (the "2002 Direct Consolidation Loan"). (*Id.* ¶ 57; Certificate of Indebtedness dated June 6, 2018 ("June 2018 Certificate of Indebtedness"), attached as Ex. A to Am. Compl., Dkt. No. 21 at 1). Mance signed a promissory note dated July 1, 2002, and returned the signature page to the DOE. (Keller Decl. I ¶ 59; Promissory Note dated July 1, 2002, attached as Ex. O to Keller Decl I., Dkt. No 18 at 1). The 2002 Direct Consolidation Loan included, and paid off, the 2001 Direct Consolidation Loan and the Perkins loan. (Keller Decl. I ¶¶ 64, 67). On August 2, 2002, the 2002 Direct Consolidation Loan was disbursed as a subsidized loan in the amount of $46,397.39 and an unsubsidized loan in the amount of $8,190.82. (*Id.* ¶¶ 64, 66; June 2018 Certificate of Indebtedness at 1). The interest rate on the loan was 6.75% per year. (June 2018 Certificate of Indebtedness at 1).

The DOE demanded repayment in accordance with the terms of the 2002 Direct Consolidation Loan note, and Mance defaulted on this obligation on September 17, 2009. (*Id.*). Payments totaling $11,950.97 were credited to the balance of the 2002 Consolidation Loan from all sources, and pursuant to 34 C.F.R. § 685.202(b), $13,778.23 in unpaid interest due as of the default date was capitalized and added to the principal balance. (*Id.*).

2

As of June 6, 2018, Mance owed Plaintiff $64,211.51 in principal and $41,343.43 in interest, a total of $105,554.94. (*Id.*; Am. Compl. ¶ 5(A)). Interest on the principal accrues at a rate of 6.75% per year, which is the equivalent of $11.87 per day. (*See* June 2018 Certificate of Indebtedness at 1; Keller Decl. ¶ 70; Am. Compl. ¶ 4).

On May 3, 2017, Mance was sent a demand letter warning of a civil lawsuit because of Mance's default on the loan. (Decl. of Rhoda Terry dated Jan. 23, 2018 ("Terry Decl."), Dkt. No. 14 ¶ 21; Letter from U.S. Dep't of Justice to Shondell Mance dated May 3, 2017, attached as Ex. H to Terry Decl, Dkt. No. 14 at 1).

## II. PROCEDURAL HISTORY

On May 12, 2017, Plaintiff commenced this lawsuit. (Compl., Dkt. No. 1). The Complaint alleged Mance owed Plaintiff $64,211.51 in principal and $36,703.81 in capitalized interest through May 11, 2017, for a total of $100,915.32. (*Id.* ¶ 3). The Certificate of Indebtedness dated April 26, 2017, attached to the Complaint, listed these same amounts as owed for a debt based on a promissory noted signed by Mance on April 5, 2000. (Certificate of Indebtedness dated Apr. 26, 2017, Dkt. No. 1 at 1). Mance was served with the summons and Complaint on June 1, 2017, by leaving a copy with a "Mrs. Mance" at Mance's home in Jamaica, New York, and mailing a copy to the same address. (Aff. of Service of Compl. dated June 1, 2017 ("Compl. Aff. of Service"), Dkt. No. 6).

### A. The First Default Judgment Motion

On June 29, 2017, Plaintiff requested a certificate of default, which the Clerk of Court entered the next day. (Request for Certificate of Default dated June 29, 2017, Dkt. No. 7; Clerk's Entry of Default dated June 30, 2017, Dkt. No 8). Plaintiff filed a motion for default judgment on July 10, 2017, (Mot. for Default J. dated July 10, 2017, Dkt. No. 9), and the Honorable Nicholas G. Garaufis granted the motion as to liability on the promissory note on October 24, 2017. *Mance*, 2017 WL 4857566, at *1. In his order granting the default judgment on liability, Judge Garaufis referred the matter to the Honorable Robert M. Levy for an inquest and Report and Recommendation on damages because "Plaintiff ha[d]

3

failed to provide the court with a document containing both the borrower's signature and the amount of the loan applied for and disbursed, without which the court [could ]not determine the amount of damages with reasonable certainty." *Id* at *4.

The case was reassigned from Judge Levy to the undersigned on October 25, 2017. (Case Reassignment dated Oct. 25, 2017).

On October 30, 2017, Plaintiff filed a letter stating "that all papers necessary to make a determination of damages and other relief sought in this matter [we]re annexed to the Summons and Complaint ... and [we]re contained in the Plaintiff's electronically filed notice of motion for default judgment and supporting papers[.]" (Letter from Michael T. Sucher to the Hon. Robert M. Levy dated Oct. 30, 2017, Dkt. No. 11). Attached to the letter was a promissory note dated April 12, 2000. (*Id.*).

By order dated December 11, 2017, this Court directed Plaintiff to supplement its submissions with evidence of the principal balance and interest owed by Mance. (Order dated Dec. 11, 2017). While Plaintiff filed some supplemental documentation on December 27, 2017, (Mem. in Supp. dated Dec. 27, 2017), as of January 10, 2018, "Plaintiff ha[d] not yet provided, per Judge Garaufis's 10/24/2017 Order, 'a document containing both the borrower's signature and the amount of the loan applied for and disbursed, without which the court cannot determine the amount of damages with reasonable certainty.'" (Order dated Jan. 10, 2018).

Plaintiff filed a declaration by DOE loan analyst Rhoda Terry (the "Terry Declaration") that outlined Mance's loan history with supporting documents. (Terry Decl. dated Jan. 23, 2018, Dkt. No. 14). On February 15, 2018, this Court issued an order noting that the documents submitted with the declaration "raise[d] more questions than they answer" and directed Plaintiff to attend a hearing on damages, provide support for its damages inquest, and be "prepared to explain the relationship between a liability judgment based on an April 2000 document and the damages sought [.]" (Order dated Feb. 15, 2018, Dkt. No. 15 at 5, 7).

4

Plaintiff then filed two declarations by DOE supervisory program and management analyst Chad Keller (the "Keller Declarations"), along with a letter submission, in support of the damages inquest. (Letter from Michael T. Sucher to the Hon. Sanket J. Bulsara dated Apr. 5, 2018, Dkt. No. 17; Keller Decl. I; Decl. of Chad Keller dated Apr. 5, 2018 ("Keller Decl. II"), Dkt. No. 19).

A damages hearing was held on June 5, 2018. (Min. Order dated June 5, 2018). At the hearing, Plaintiff agreed to withdraw its motion for default judgment and file an amended complaint—Plaintiff's counsel acknowledged that the date of execution of the promissory note listed on the certificate of indebtedness attached to the original Complaint (April 5, 2000) was erroneous. (Tr. dated June 5, 2018 ("June 5 Tr."), Dkt. No. 31 at 5:04–5:09).

B. The Amended Complaint and Second Default Judgment Motion

An Amended Complaint was filed on June 15, 2018. (Am. Compl. dated June 15, 2018, Dkt. No. 21). The Amended Complaint seeks judgment of $105,554.94 (the principal of $64,221.51 and interest as of June 6, 2018, of $41,343.43); prejudgment interest from June 6, 2018, through the date of judgment at 6.75% per year; post-judgment interests, pursuant to 28 U.S.C. § 1961; administrative costs; attorney's fees; and other relief. (Id. ¶ 5). Attached to the Amended Complaint is a Certificate of Indebtedness listing July 1, 2002, as the date of execution of the promissory note to secure a Direct Consolidation loan from the DOE. (June 2018 Certificate of Indebtedness at 1). The loan to which the note referred was disbursed for amounts of $46,397.39 and $8,190.82 on August 2, 2002, at a yearly interest rate of 6.75% and was "made by the [DOE] under the William D. Ford Federal Direct Loan Program under Title IV, Part D of the Higher Education Act of 1965, as amended 20 U.S.C. 1087a et seq. (34 C.F.R. Part 685)." (Id.). Per the Certificate of Indebtedness, on September 17, 2009, the DOE demanded payment according to the terms of the note. (Id.). "Pursuant to 34 C.F.R. § 685.202(b), a total of $13,778.23 in unpaid interest was capitalized and added to the principal balance." (Id.). The Certificate of

5

Indebtedness claims Mance owed the same amount listed as those alleged in the Amended Complaint: a total of $105,554.94 as of June 6, 2018, $64,211.51 of which is unpaid principal and $41,343.43 is unpaid interest. (*Id.*).

Mance was served with the Amended Complaint on June 26, 2018, by leaving a copy of the summons and Amended Complaint with "Mrs. Mance" who was believed to be a "Family Relative" at Mance's home address in Jamaica, New York. (Aff. of Service of Am. Compl. dated July 31, 2018 ("Am. Compl. Aff. of Service"), Dkt. No. 24 at 1). A copy of the same was mailed to Mance at the same address. (*Id.*).

Plaintiff requested a certificate of default and default was entered on August 2, 2018, because Mance had still not appeared and failed to defend the action after the filing of the Amended Complaint. (Request for Certificate of Default dated July 31, 2018, Dkt. No. 25; Clerk's Entry of Default dated Aug. 2, 2018, Dkt. No. 26).

Eight months later, after Plaintiff had not acted, the Court directed Plaintiff to file any motion for default judgment. (Order dated Apr. 9, 2019). Plaintiff filed a motion for default judgment as to the Amended Complaint (the "Motion"), (Mot. for Default J. dated Apr. 18, 2019, Dkt. No. 27), and Judge Garaufis referred the Motion to the undersigned, (Order Referring Mot. dated Apr. 19, 2019). A supporting memorandum of law, as required by Local Rule 7.1(a)(2), was filed on November 12, 2019. (Mem. in Supp. dated Nov. 12, 2019 ("Pl.'s Br."), Dkt. No. 30). The Motion is compliant with Local Rule 55.2 for motions for default judgment.

The Motion seeks the entry of judgment on liability as to the 2002 Direct Consolidation Loan and an award of damages in "the sum of $64,211.51 in principal, together with interest of $47,563.31 through November 12, 2019, plus costs for service of process in the sum of $77.08, totaling $111,851.90, plus additional *per diem* interest at $11.87 per day for each day after November 12, 2019 through the date a judgment" is entered. (Pl.'s Br. at 7–8). For the reasons stated below, it is respectfully recommended that the Motion be granted and judgment be entered as indicated below.

## III. DISCUSSION

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment. *See Shariff v. Beach 90th St. Realty Corp.*, No. 11-CV-2551, 2013 WL 6835157, at *3 (E.D.N.Y. Dec. 20, 2013) (adopting report and recommendation). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after default has been entered, and a defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on Plaintiff's motion, enter a default judgment against that defendant. Fed. R. Civ. P. 55(b)(2). The Clerk entered default against Mance on August 2, 2018. (Clerk's Entry of Default dated Aug. 2, 2018, Dkt. No. 26).

### A. Entry of Default Judgment

A threshold question before reaching liability or damages is whether Mance's conduct is sufficient to warrant default judgment being entered. In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside an entry of a default. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001). These factors are "1) whether the defendant's default was willful; 2) whether the defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003).

As to the first factor, the failure by Mance to respond to the Amended Complaint sufficiently demonstrates willfulness. *See, e.g., Indymac Bank v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007). Mance has not attempted to defend the present action, nor has Mance requested an extension of time to respond to the Amended Complaint. Based on its review of the docket, the Court concludes

7

that Mance has had sufficient notice of the present litigation. Plaintiff has demonstrated that Defendant was properly served all required papers. First, on May 31, 2017, a true copy of the summons and Complaint was left with a person of suitable age and discretion at Mance's residence.[1] (Compl. Aff. of Service at 1). An additional copy of the summons and original Complaint was also mailed to Mance on June 1, 2017. (*Id.*). On July 10, 2017, Plaintiff served the first motion for default judgment and supporting papers by mailing them to Mance's last known residence. (Aff. of Service of Mot. for Default J., attached as Ex. 5 to Mot., Dkt. No. 9 at 1). The same is true for the Amended Complaint and second motion for default judgment. On June 26, 2018, a copy of the summons and Amended Complaint was left with a person of suitable age and discretion at Mance's residence. (Am. Compl. Aff. of Service at 1). A copy of the same was mailed to Mance on June 27, 2018. (*Id.*). On April 22, 2019, the second motion for default judgment and supporting papers were mailed to Mance. (Aff. of Service of Mot. for Default J. dated Apr. 22, 2019, Dkt. No. 29 at 1). Mance has willfully failed to plead or defend any interest in this action. *See, e.g., United States v. Myers*, 236 F. Supp. 3d 702, 707 (E.D.N.Y. 2017) ("The instant motion was mailed to . . . the same address where [defendant] was served with the Summons and Amended Complaint. . . . Defendant has not responded to the Government's motion for default judgment nor appeared in any way in this action. Defendant's failure to answer the Amended Complaint and to respond to the instant motion demonstrates willfulness under existing case law.").

As to the second factor—whether Mance has a meritorious defense—the Court cannot conclude there is any meritorious defense to Plaintiff's allegations because Mance has not appeared and no defense has been presented to the Court. *See, e.g., IndyMac Bank*, 2007 WL 4468652, at *1 (finding no meritorious defense where defendants had not

---

[1] The address at which Mance was served with all documents described herein is the same address in the underlying loan documents. (*See* "Debtor's Data Screen Capture," undated, attached as Ex. F to Terry Decl., Dkt. No 14 at 1) (listing Mance's biographical and 2002 Direct Consolidation Loan information).

presented such a defense to the Court); *see also United States v. Hemberger*, No. 11-CV-2241, 2012 WL 1657192, at *2 (E.D.N.Y. May 7, 2012) (same). The defects in Plaintiff's previous default judgment applcation were not defenses for liability.[2] *See Mance*, 2017 WL 4857566, at *4 ("While the court finds that the complaint establishes Defendant's liability to Plaintiff for unpaid amounts under the loan, it cannot ascertain an amount of damages.").

The third and final factor permits enry of default judgment because the Court finds that the non-defaulting party, Plaintiff, would be prejudiced if the motion for default were denied in this case "as there are no additional steps available to secure relief in this Court." *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008), *report and recommendation adopted*, 2009 U.S. Dist. LEXIS 6074 (Jan. 26, 2009).

As a result, all three factors permit entry of a default judgment. The Court now turns to the liability to be imposed.

**B.** **Liability**

When a defendant defaults, a court, on consideration of a plaintiff's default judgment motion "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor[.]" *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). In addition, a party's default is deemed as an admission of all of well-pleaded allegations of liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d. Cir. 1992); *Morales v. B&M Gen. Renovation Inc.*, No. 14-CV-7290, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016), *report and recommendation adopted*, 2016 WL 1258482 (Mar. 29, 2016).

"Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of

---

[2] The Court has no basis to conclude Mance has any available "borrower defense." *See* 20 U.S.C. § 1087e(g); 34 C.F.R. §§ 685.206, 685.222.

law." *Labarbera v. ASTC Labs. Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (quotations omitted); *see also* 10A Charles Alan Wright & Arthur R. Miller et al., *Federal Practice and Procedure* § 2688.1 (3d ed. 2017) ("Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief. Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." (footnote omitted)).

"In an action commenced by the DOE to collect funds due on an unpaid student loan, the DOE is entitled to judgment in its favor if it establishes that the defendant signed a promissory note to secure the loan, the DOE issued the loan funds, the defendant defaulted on the loan and the remaining amount due on the loan." *United States v. Thomas*, No. 16-CV-6076, 2017 WL 2656123, at *2 (E.D.N.Y. June 19, 2017) (collecting cases); *see also United States v. Ramdawah*, No. 17-CV-7562, 2018 WL 2225305, at *2 (E.D.N.Y. Apr. 20, 2018) ("Plaintiff's allegations in the complaint and the certificate of indebtedness establish Defendant's liability for unpaid [Direct Consolidation] student loan payments."), *report and recommendation adopted*, 2018 WL 2224994 (May 15, 2018). "The DOE may establish all of the elements entitling it to a judgment if it includes facts alleging each element in its complaint and provides the court with the promissory note the defendant executed and a certificate of indebtedness." *Thomas*, 2017 WL 2656123, at *2; *see also United States v. Williams*, No. 17-CV-566, 2017 WL 7052280, at *2 (E.D.N.Y. Dec. 8, 2017) (finding liability based on "Plaintiff's allegations in the complaint and the certificate of indebtedness" for a Direct Consolidation loan), *report and recommendation adopted*, 2018 WL 581050 (Jan. 25, 2018); *United States v. Pelt*, No. 11-CV-06156, 2013 WL 1173898, at *6 (E.D.N.Y. Mar. 18, 2013) ("In general, the United States may demonstrate the existence of student loans by providing promissory notes and may demonstrate that the loans remain unpaid by providing certificates of indebtedness.").

Here, Plaintiff has established each element necessary to collect on Mance's unpaid student loan. Mance executed a promissory note to secure the 2002 Direct Consolidation Loan, (Am. Compl. ¶ 4), and the DOE issued the loan funds, (June 2018 Certificate of Indebtedness attached as Ex. A to Am. Compl. Dkt. No. 21 ("This loan was disbursed [.]")). Mance also failed to pay the amounts due under a loan held by Mance, (Am. Compl. ¶¶ 4, 5), and Plaintiff has filed the Promissory Note signature page,[3] signed on July 1, 2002, (Promissory Note dated July 1, 2002, Ex. 2 to Mot., Dkt. No. 27), and the Certificate of Indebtedness for the "promissory note to secure a Direct Consolidation loan from" the DOE, executed on July 1, 2002, (June 2018 Certificate of Indebtedness). Such evidence is sufficient proof that a defendant has defaulted on his student loan. *E.g., United States v. Terry*, No. 08-CV-3785, 2009 WL 4891799 (E.D.N.Y. Dec. 11, 2009) (adopting report and recommendation) (finding that promissory note and Certificate of Indebtedness from the DOE sufficient to hold defendant liable). Thus, the Court recommends the entry of a default judgment against Mance on liability for nonpayment of the 2002 Direct Consolidation Loan.

The Court now turns to the damages to be awarded in such a judgment.

### C. Damages

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup*, 973 F.2d at 158. "Although the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent

---

[3] The second declaration of Chad Keller states that "Mance returned the signature page only to" DOE for a promissory note that "Mance signed ... dated July 1, 2002," that allegedly "said 'I promise to pay the [DOE] all sums ... disbursed to discharge my prior loan obligations, plus interest, and other fees that may become due as provided in this Note.'" An unsigned copy of the the standard promissory note was filed. (Form of Promissory Note, undated, attached as Ex. 3 to Mot. for Default J., Dkt. No. 27). Other courts have found this to be sufficient evidence of the required promissory note. *See, e.g., Student Loan Mktg. Ass'n v. Hanes*, 181 F.R.D. 629, 634 n.5 (S.D. Cal. 1998) ("Sallie Mae filed a copy of the promissory note. However, the document included only the initial signature page, and not the additional pages that provide many of the terms of the agreement. However, a complete copy of the Note was filed as part of the Holloway Declaration. No party has challenged the authenticity or completeness of the Note as filed with the Holloway Declaration."); *see also United States v. Cogan*, No. 13-CV-1263, 2014 WL 4635605, at *2 (D. Nev. Sept. 12, 2014) (citing certificates of indebtedness and a promissory note signature page as proof of student loan debt owed).

11

determination of the sum to be awarded." *Griffiths v. Francillon*, No. 10-CV-3101, 2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012) (alteration and quotations omitted). "The court must conduct an inquiry to ascertain the amount of damages with reasonable certainty." *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1992)). "Where, on a damages inquest, a plaintiff fails to demonstrate its damages to a reasonable certainty, the court should decline to award any damages, even though liability has been established through default." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527–28 (S.D.N.Y. 2012) (collecting cases).

The DOE provides Federal Direct Consolidation loans, and other Federal Direct loans, pursuant to the William D. Ford Federal Direct Loan Program, Part D of the Higher Education Act. *See* 20 U.S.C. § 1087a(b)(2). "Pursuant to the Higher Education Act of 1965, 20 U.S.C. §§ 1071 *et seq.*, the United States is entitled to the unpaid principal and accrued interest on federally insured student loans in default." *United States v. Defiris*, No. 15-CV-2541, 2016 WL 8711351, at *2 (E.D.N.Y. Apr. 7, 2016) (citing 20 U.S.C. § 1091a (b)(1)) (quotations omitted), *report and recommendation adopted*, 2016 WL 8711196 (Sept. 30, 2016). And "the Secretary of Education may require any borrower who has defaulted on a loan made under the William D. Ford Federal Direct Loan Program to 'pay all reasonable collection costs associated with such loan[.]'" *United States v. Jones*, No. 11-CV-2869, 2015 WL 332115, at *2 (E.D.N.Y. Jan. 23, 2015) (quoting 20 U.S.C. § 1087e(d)(5)(A)–(B)). This includes "prejudgment interest and the costs of perfecting service of the summons and complaint on a defendant-borrower." *United States v. Ramdawah*, No. 17-CV-7562, 2018 WL 2225305, at *2 (E.D.N.Y. Apr. 20, 2018) (citing 20 U.S.C. § 1087e(d)(5)(A)), *report and recommendation adopted*, 2018 WL 2224994 (May 15, 2018). "The submission of [a Certificate of Indebtedness] along with evidence of costs of service is sufficient to award both pre-judgment interests and costs of service, in addition to the unpaid principal and accrued interest." *Williams*, 2017 WL 7052280, at *2.

The Motion seeks entry of a judgment of $105,554.94 plus additional interest; that is, the principal, inclusive of previously capitalized interest, of $64,221.51; interest as of June 6, 2018, of $41,343.43; prejudgment interest from June 6, 2018, through the date of judgment at 6.75% per year; post-judgment interest pursuant to 28 U.S.C. § 1961; and the cost of service of process of $77.08. (Aff. of Michael T. Sucher in Supp. of Mot. for Default J. dated Apr. 18, 2019 ("Aff. in Supp. of Mot."), Dkt. No. 27 ¶¶ 10, 11; Am. Compl. ¶¶ 5(A)–(D)). In support, the Motion references the Certificate of Indebtedness attached to the Amended Complaint that lists July 1, 2002, as the date of execution of a promissory note to secure a Direct Consolidation loan from the DOE; the Keller Declarations, and the Terry Declaration. (*See* Pl.'s Br. at 4; Aff. in Supp. of Mot. ¶ 7; June 2018 Certificate of Indebtedness at 1).

The Court initially declined to ascertain damages for the original Complaint, explaining "Plaintiff has failed to provide the court with a document containing both the borrower's signature and the amount of the loan applied for and disbursed, without which the court cannot determine the amount of damages with reasonable certainty." *Mance*, 2017 WL 4857566, at *4. At a damages hearing, it was revealed that the papers filed in support of this action contained an erroneous date of execution of the promissory note. (June 5 Tr. at 5:04–5:09). Plaintiff has since filed papers that match the promissory note execution date with the Certificate of Indebtedness, the subject of the allegations in the Amended Complaint, and properly moved for default judgment as to the debt reflected therein.

The Certificate of Indebtedness, filed with the Amended Complaint, lists the same principal and interest amounts as of June 8, 2018, as the Amended Complaint. (June 2018 Certificate of Indebtedness at 1; Am. Compl. ¶¶ 4(A)–(B)). The Certificate of Indebtedness purports to be for a promissory note that was executed on July 1, 2002. (June 2018 Certificate of Indebtedness at 1). Unlike the Certificate of Indebtedness attached the original Complaint, the one attached to the Amended Complaint corresponds with the

Promissory Note signature page attached to the Terry Declaration and attached to the Motion: the signature date on the Promissory Note is the same as the promissory note execution date listed on the Certificate of Indebtedness, namely, July 1, 2002. (*See* Promissory Note dated July 1, 2002, attached as Ex. 3 to Terry Decl., Dkt. No. 14; Promissory Note dated July 1, 2002, attached as Ex. 2 to Mot., Dkt. No. 27). Thus, it is respectfully recommended that Plaintiff be awarded the principal amount of $64,221.51, and the amount of interest as of June 8, 2018, listed in the Certificate of Indebtedness, of $41,343.43. *See, e.g., United States v. Ballentine*, No. 16-CV-6066, 2017 WL 1653436, at *2 (E.D.N.Y. May 1, 2017) ("[P]laintiff has established, via a sworn certificate of indebtedness, that defendant owes a principal balance of $15,439.97. . . . The Court orders that plaintiff be awarded this amount. Next, plaintiff requests prejudgment interest. . . . [T]he Court orders an award of [the amount in the certificate of indebtedness.]").

In addition, Plaintiff seeks to recover prejudgment interest accrued June 8, 2018, through the date of judgment at a rate of 6.75% per year or $11.87 per day. (Am. Compl. ¶ 5(B); Pl.'s Br. at 7–8; June 2018 Certificate of Indebtedness at 1 (providing that the 2002 Direct Consolidation Loan was disbursed at 6.75% interest per annum)); *see also* 20 U.S.C. § 1087e(b)(6)(D) ("[A]ny Federal Direct Consolidation loan for which the application is received on or after February 1, 1999, and before July 1, 2006, shall bear interest at an annual rate on the unpaid principal balance of the loan that is equal to the lesser of—(i) the weighted average of the interest rates on the loans consolidated, rounded to the nearest higher one-eighth of one percent; or (ii) 8.25 percent."). Plaintiff calculated interest to be $6,219.88 from June 8, 2018, to November 12, 2019, the date it filed its memorandum of law. This is an erroneous calculation of the actual interest that accrued between these two dates. Five hundred and twenty-two days passed between the two dates, and at a rate of $11.87 per day, $6,196.14 in interest accrued. Thus, $6,196.14 should be awarded to Plaintiff for the time period of June 8, 2018, to November 12, 2019. In addition, Plaintiff should be awarded $11.87 per day for each day between November 12,

2019, until the date judgment is entered. *See, e.g., Ballentine*, 2017 WL 1653436, at *2 (awarding prejudgment interest based on interest rate listed in Certificate of Indebtedness until the date of judgment).

Plaintiff also seeks post-judgment interest pursuant to 28 U.S.C. § 1961 from the date of the entry of judgment until the judgment is paid. (Am. Compl. ¶ 5(C)). "An award of post-judgment interest is appropriate in cases seeking the recovery of unpaid student loans." *Defiris*, 2016 WL 8711351, at *3. In addition, "[i]t is appropriate to award post-judgment interest in the context of a default judgment." *N.Y.C. Dist. Council of Carpenters v. Trinity Phoenix Constr. Corp.*, No. 17-CV-609, 2018 WL 1521862, at *6 (E.D.N.Y. Jan. 10, 2018), *report and recommendation adopted*, 2018 U.S. Dist. LEXIS 41194 (Mar. 12, 2018). Accordingly, it is recommended that Plaintiff be awarded interest post-judgment interest pursuant to 28 U.S.C. § 1961.[4] *See, e.g., United States v. Champion*, No. 17-CV-605, 2018 WL 1033244, at *1 (E.D.N.Y. Feb. 20, 2018) (adopting report and recommendation and awarding post-judgment interest in student loan default judgment).

Finally, Plaintff requests $77.08 for service of process of the Amended Complaint, and this amount is substantiated by an invoice. (*See* Aff. in Supp. of Mot. ¶ 10; Process Server's Bill dated July 2, 2018, attached as Ex. 4 to Mot., Dkt. No. 27 at 1). The cost of perfecting service of process on a defendant-borrower is a reasonable collection cost. *See Williams*, 2017 WL 7052280, at *2 (citing 20 U.S.C. § 1087e(d)(5)(A)) (recommending judgment be entered for a default on a Direct Consolidation loan in an amount including the cost of perfecting service, which was supported by a receipt). Thus, the Court recommends that $77.08 be awarded in costs. *See, e.g., Thomas*, 2017 WL 2656123, at *3 (awarding service costs in Federal Direct loan default judgment).

---

[4] While the Amended Complaint requests "attorneys' fees to the extent allowable by law," the Affirmation in Support of the Motion for Default Judgment, states "no request for legal fees is being made herein." (Aff. in Supp. of Mot. ¶ 9). Thus, no attorney's fees should be awarded. *See, e.g., Defiris*, 2016 WL 8711351, at *3 ("The complaint seeks judgment including 'attorneys' fees to the extent allowed by law. . . . The default judgment motion, however, contains no request for such recovery and provides no support, such as contemporaneous time records, for an award of attorneys' fees. . . . Accordingly, it is recommended that no attorneys' fees or costs be awarded at this time.").

## IV. CONCLUSION

For the reasons stated above, it is respectfully recommended that default judgment be entered as to liability on the Amended Complaint and Plaintiff be awarded the following:

$105,554.94, which is the principal plus interest as of June 6, 2018;

Pre-judgment interest from June 6, 2018, through the date of the entry of judgment at the rate of 6.75% per year or $11.87 per day;

Post-judgment interest pursuant to 28 U.S.C. § 1961 at the rate from the date of entry of judgment until the judgment is paid in full; and

Costs of $77.08, the cost of service of process.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may waive the right to appeal the District Court's order. *See Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate [judge's] report operates as a waiver of any further judicial review of the magistrate [judge's] decision.").

Plaintiff shall serve a copy of this Report and Recommendation on the Defendant and file proof of such service in the record within two weeks of the date of this Report.

*/s/ Sanket J. Bulsara* Jan. 16, 2020
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York